JOHN L. WHITING-J. J. ADAMS COMPANY *vs.* ADAMS-WHITE BRUSH COMPANY & others.

Suffolk.   March 9, 1927. — May 24, 1927.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Unlawful Interference.   Trade Name.   Corporation,* Name.   *Equity Jurisdiction,* To enjoin use of name.

A master, who heard a suit in equity by a corporation named John L. Whiting-J. J. Adams Company, organized in 1908 for manufacturing and selling brushes, to enjoin another corporation, named Adams-White Brush Company, incorporated in 1925, from using that name or any

other name so similar to the plaintiff's as to confuse the public and from infringing on trademarks of the plaintiff using the names "Adams" and "Whiting," found that in the use of the surname in question in its corporate name the defendant had no fraudulent design to pass itself off as the plaintiff or to deprive the plaintiff of its patronage; that the defendant's name was not so similar to that of the plaintiff as to be mistaken for it; that the products of the defendant differed in shape, design, appearance and purpose from those of the plaintiff; and that, so far as the goods made by the plaintiff and by the defendant were concerned, the two companies were "to all intents and purposes in different lines of business." The bill was dismissed. The plaintiff appealed. *Held,* that

(1) There was no such identity or likeness in the two names as to deceive one of ordinary prudence or to justify the interference of a court of equity;

(2) There was nothing to support a contention by the plaintiff that there was actual or probable deception of the public, to the plaintiff's harm, because of unfair trade competition;

(3) The plaintiff's trademarks were not injured by the defendant's use of its corporate name;

(4) The bill was dismissed properly.

BILL IN EQUITY, filed in the Superior Court on August 17, 1925, and afterwards amended, as described in the opinion.

In the Superior Court, the suit was referred to a master. Material findings by the master are stated in the opinion. The suit was heard on the master's report by *Morton,* J., by whose order there was entered a final decree dismissing the bill. The plaintiff appealed.

*F. O. White,* (*R. C. Rounds* with him,) for the plaintiff.

*S. Maylor, Jr.,* for the defendants.

CARROLL, J.   In this bill in equity the plaintiff sought to restrain the defendant corporation (hereafter called the defendant) from manufacturing or selling brushes under the name of "Adams-White Brush Company" or any other name so similar to the plaintiff's as to confuse the public, and from infringing on the trademarks "Adams" and "Whiting," belonging to the plaintiff.

Two men whose surnames were Whiting and Adams for many years carried on the business of brush making in Boston. The firms established by them were continued by surviving members of their families. In the year 1908 the two firms formed a corporation under the laws of Maine and adopted the name of the present plaintiff. Later this corpo-

ration was succeeded by a Massachusetts corporation of the same name. The plaintiff manufactures brushes designated as "Whiting" brushes and "Adams" brushes, and has trademarks "Whiting" and "Adams." The brushes are labeled "Whiting" or "Adams." While the plaintiff's principal output is brushes used by painters, it also manufactures dusters, shoe brushes, hair brushes and brushes of many classes and varieties. The paint brushes are of many types which the trade call for by designating the surnames "Whiting" or "Adams." The paint brushes are carried in stock; the other brushes are made on order.

The Adams-White Brush Company was incorporated on July 28, 1925. It was formed by Joseph Adams, James C. White and Millins W. Prouty. For several years prior to this date Joseph Adams conducted a general brush business in Boston, catering especially to tanners and leather manufacturers. The family name of Adams was Adamsky. Adams is fifty years of age. Before he was twenty-one years old, while working in London, he was known by the name of Adams. Since that time he has always been known by that name. He was naturalized in 1895 under the name of Adams. The master found that in adopting the name Adams he had no fraudulent design to pass himself off as the plaintiff or to palm off his wares as those of the plaintiff. In 1922 he obtained a patent for a rotary brush under the name of Adams. With White and Prouty he formed the defendant corporation. Adams and Prouty were the holders of the stock; White was an employe of the corporation. Prouty promised White some of his (Prouty's) stock "as a means of stimulating White's enthusiasm." White agreed to become "a qualifying stockholder" and consented to the use of his name. When the defendant corporation was formed the question arose of the similarity of the proposed name and that of the plaintiff. The advice of counsel was that the name selected did not conflict with the name of the plaintiff corporation. The master also found that the use of the name White was not prompted by any desire on the part of White or the defendant to deprive the plaintiff of its patronage.

The plaintiff contends that the use of the defendant's name is in violation of G. L. c. 155, § 9; that the name Adams-White Brush Company is so similar to that of the plaintiff as to be mistaken for it; that the similarity of the name and business is such that a reasonably prudent person interested in the brush business would be likely to mistake the defendant corporation and its goods for the plaintiff and its goods. On this question the master found that the defendant's name was not so similar to that of the plaintiff as to be mistaken for it. He was unable to find "that the type, context, or other visual features of the names as they appear to the public are or pretend to be similar in the slightest degree."

The business of the plaintiff is done at wholesale and is national in scope. The copyright name, "Whiting" or "Adams" as the case may be, is impressed on its brushes, the plaintiff thus maintaining the distinction of the two names. The labels for the cartons in which the brushes are packed contain the designation "Whiting" or "Adams" supplemented by the statement, "manufactured by John L. Whiting - J. J. Adams Co., Boston, U. S. A." The plaintiff's products are best known through the variety and excellence of its paint brushes. The other brushes made by it constitute but a small part of its output, but its reputation as a paint brush manufacturer is helpful to it in acquiring patronage for brushes not used by painters.

The rotary brush manufactured by the defendant is adapted to the use of tanners and leather manufacturers. The defendant's business is the promotion of a market for this brush and its present policy is to confine its whole energy to this enterprise. The plaintiff has no product which resembles the rotary brush or accomplishes its purpose and it has no appreciable trade with tanners and leather manufacturers. Certain instrumentalities used by the defendant in making the rotary brush are common to all brush makers, but the master found that the products of the defendant differ in shape, design, appearance and purpose from those of the plaintiff; that so far as the goods made by the plaintiff and defendant are concerned, the two companies are "to all intents and purposes, in different lines of business."

An officer of the defendant testified before the master that while it was not the defendant's intention to engage in the general brush business, it was a possibility. In considering this testimony the master found that there was no basis for apprehending that the plaintiff and defendant are or will be competitors; that they do not look for the same class of patronage; and that their products are not similar in quality or kind. There was some evidence that letters were addressed to the plaintiff by the two family names, with or without the word "company," and "with or without the given names of Whiting or Adams" and in various other ways. All of these letters, however, reached their intended destination; none of them came to the defendant and none of its letters went to the plaintiff.

Since the commencement of the suit, Adams has disposed of his stock in the defendant corporation, and is no longer connected with it, and no one of that name is now a member of the defendant corporation. Adams withdrew because of disagreements with Prouty.

In the Superior Court a final decree was entered dismissing the bill. The plaintiff appealed.

G. L. c. 155, § 9, is to the effect that a corporation organized under the general laws shall not assume the name of any other corporation established under the laws of the Commonwealth, or assume a name so similar thereto as to be likely to be mistaken for it. The master has found that no reasonably prudent person would confuse the defendant's name with that of the plaintiff; that the defendant's name is not so similar to the plaintiff's as to be mistaken for it. There was no error in these findings. There is in fact no such identity or likeness in the two names as to deceive one of ordinary prudence or to justify the interference of a court of equity. Under the statute the similarity of the names must be such as to mislead a person of average intelligence. The names of the plaintiff and defendant are different; and they are not so similar as to confuse an ordinary observer where slight attention would enable him to discriminate between them. *Hub Dress Manuf. Co.* v. *Rottenberg*, 237 Mass. 281. *Walling-*

*ford* v. *International Manuf. Co.* 244 Mass. 477. *New England Confectionery Co.* v. *C. A. Briggs Co.* 256 Mass. 456.

The master found that the defendant was not attempting to pass itself off as the plaintiff or to pass off its goods as the plaintiff's goods. The defendant was not a rival of the plaintiff. The products of the two concerns were different. The rotary brush, in the sale and manufacture of which the defendant specialized, did not compete with the paint brushes or products of the plaintiff. Actual or probable deception of the public, to the plaintiff's harm, because of unfair trade competition, is the basis of the plaintiff's suit. Upon the findings of the master there was nothing to support this contention. No one was in fact misled, nor was the average person likely to be misled. The defendant dealt in products not manufactured by the plaintiff; there is no likelihood in the future that it will compete with the plaintiff. *Wallingford* v. *International Manuf. Co. supra*, and cases cited.

The trademarks "Adams" and "Whiting" were not infringed by the defendant's use of its corporate name. As we have said, a rational observer would not be misled and the defendant was not a rival of the plaintiff. *International Trust Co.* v. *International Loan & Trust Co.* 153 Mass. 271. *C. A. Briggs Co.* v. *National Wafer Co.* 215 Mass. 100. *Burns* v. *William J. Burns International Detective Agency, Inc.* 235 Mass. 553. *Hub Dress Manuf. Co.* v. *Rottenberg, supra. Libby, McNeill & Libby* v. *Libby*, 241 Mass. 239. *Wallingford* v. *International Manuf. Co., supra. New England Confectionery Co.* v. *C. A. Briggs Co., supra.*

There was no fraud or deception practised by the defendant or by Adams in the use of his name. The bill was dismissed properly.

*Decree affirmed with costs.*