MYRON S. SILBERT *vs.* EDWARD KERSTEIN & others.

Middlesex.    May 9, 1945. — July 3, 1945.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Name.    Unfair Competition.    Unlawful Interference.*

A plaintiff, operating under the name "Emerson Fashions" a small department store selling women's apparel of all kinds, was not entitled to an injunction against the defendant's later use of the name "Emerson's Shoes" in conducting a small retail shoe store near the plaintiff's store, where it appeared that competition between the two stores was negligible, that the defendant had no intent to deceive the public into thinking that his store was, or was connected with, the plaintiff's store, and that there was nothing in the nature or appearance of the defendant's store or in his method of conducting it which would be reasonably likely to cause one using due care to confuse it with the plaintiff's store.

BILL IN EQUITY, filed in the Superior Court on August 9, 1944.

The suit was heard by *Broadhurst,* J.

*C. Silbert,* for the plaintiff.

*H. Snyder,* for the defendants.

RONAN, J.   This is an appeal from a final decree dismissing a bill in equity brought by the plaintiff, doing business under the name of "Emerson Fashions," to restrain the defendants from doing business under the name of "Emerson's Shoes" on the ground that they are unfairly competing with him.

The judge made a report of the material facts. The plaintiff challenges the correctness of many of those findings. We have a report of all the evidence, and all questions of law, fact and discretion are open for our decision. It is our duty to examine the evidence and reach our own conclusions, giving weight to the findings of the judge based on oral testimony unless shown to be plainly wrong, and drawing our own inferences from facts admitted or found

irrespective of inferences drawn by the trial judge. *Lowell Bar Association* v. *Loeb,* 315 Mass. 176. *Jurewicz* v. *Jurewicz,* 317 Mass. 512. *Kerwin* v. *Donaghy,* 317 Mass. 559.

We summarize the material facts, as shown by the record, as follows: The plaintiff since late in 1940 has conducted a store in the shopping district of Newtonville under the name of "Emerson Fashions" and has filed a certificate under G. L. (Ter. Ed.) c. 110, § 5, stating that he was conducting the store under that name. The store is located on the corner of two streets. The plaintiff sells all kinds of wearing apparel for women, misses and children, together with hosiery, gloves, handbags, costume jewelry, cosmetics, yarns, children's books and toys. He sells a few trade name brands of shoes for women and girls, one trade name brand of shoes for children, one brand of women's slippers, and rubbers and overshoes for women and children. He does not deal in shoes for men or for boys over six years of age. The plaintiff advertises in two local newspapers. Some of these advertisements mentioned shoes, but many of them did not. The plaintiff has done some direct mail advertising, principally before Christmas, in which there was only a meager reference to footwear except in one circular mailed in 1941, which was prepared by a manufacturer of women's shoes and which described only that make of shoes. His total sales up to October 1, 1944, were $122,616, and the estimated total sales of shoes were $10,000, of which, during the last year, three fourths were nonrationed shoes. His monthly sales of hosiery amounted to about $950. The plaintiff employed a manager, a sales manager and two sales clerks on full time, a part-time clerk each day, and extra clerks for the holiday seasons.

The defendant Kerstein purchased in January, 1938, from one Emerson a shoe store located in the Allston district of Boston, together with the right to use the name "Emerson Shoe Store" and to assign or to license others to use that name. Kerstein filed a certificate with the city clerk of Boston that he was conducting the store under that name. The individual defendants formed the corpo-

rate defendant in 1940. It purchased a shoe store in Arlington which since January, 1941, it conducted as "Emerson's Shoes." It filed a certificate with the town clerk of Arlington that it was doing business under that name. The corporation leased a store on Walnut Street in Newtonville, and since August, 1944, it has maintained the store under the name of "Emerson's Shoes." Shortly before this store was opened, a certificate signed by the three individual defendants, who placed after their signatures the abbreviated titles of their respective offices in the corporate defendant, was filed with the city clerk of Newton that the business was conducted under that name although the corporate defendant, the owner of the store, was not mentioned in this certificate. The business of all three stores is the sale of shoes for men, women, boys, girls and children, hosiery, and "findings" such as shoe polish, shoe trees, laces and heel pads. None of the defendants sells feminine wearing apparel other than shoes and hosiery. The corporate defendant is the sole distributor in Newtonville of several brands of men's, women's, youths' and children's shoes. Its store is located on the opposite side of the street from the plaintiff's store and is about four hundred feet distant therefrom. It is the only store selling footwear and hosiery exclusively in that part of Newtonville. The corporate defendant employs only one full-time employee in its Newtonville store. The sales of shoes at this store up to October 17, 1944, amounted to $4,055.50 and its sales of "findings" including hosiery amounted to $35. The women's, misses' and children's shoes sold by both parties are of about the same quality and price, but there is a difference in the kinds and styles of shoes sold by them.

The judge found that in certain instances mistakes in the delivery to the plaintiff of mail, goods or messages that were intended for the corporate defendant were due to carelessness on the part of third persons. There was no intent on the part of the defendants to deceive the public into believing that the Newtonville store was the plaintiff's store or that it was in any way connected with it.

Competition between them in the sale of hosiery and footwear has been and will probably continue to be so slight as to be negligible. There is nothing about the nature of the business of the corporate defendant, the appearance of its store, outside or inside, its name or its advertising that would be likely to create a reasonable probability that persons using due care will be induced to trade with that defendant in the belief that its store is conducted by the plaintiff. There has been no attempt to appropriate the plaintiff's business or to trade upon his good will or reputation.

The burden is upon the plaintiff to show that the defendants are conducting their business in such a manner as to mislead the public into believing that in trading with them they are trading with the plaintiff. Actual deception of the public need not be shown, but it must be proved that the conduct of the defendants is such that it is reasonably probable that such deception will result unless the defendants are restrained. *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172. *Norton* v. *Chioda,* 317 Mass. 446. The plaintiff conducts a small department store. The defendant corporation conducts a retail shoe store. Competition between them is limited to the sale of women's, misses' and children's footwear and hosiery, with the further exception that the plaintiff sells women's slippers. Competition is also limited where purchasers are looking for a particular make or kind of shoe, for the only type of shoe carried in common by the plaintiff and the corporate defendant is a girl scout shoe, of which there are various makes, but the "official" girl scout shoe, so called, is carried by the defendant corporation and not by the plaintiff. Competition exists only where both parties are soliciting purchasers of similar goods in the same territory at the same time. We cannot say that the judge was plainly wrong in finding that competition in the sale of footwear and hosiery has been and will probably continue to be so slight as to be negligible. *Libby, McNeill & Libby* v. *Libby,* 241 Mass. 239. *John L. Whiting-J. J. Adams Co.* v. *Adams-White Brush Co.* 260 Mass. 137. *Women's Mutual Benefit Society, St.*

*Mary of Carmen* v. *Catholic Society Feminine of Maria, S. S. of Monte Carmelo,* 304 Mass. 349. *First National Stores Inc.* v. *First National Liquor Co.* 316 Mass. 538.

No one by the name of Emerson was connected with either store. Neither store sold the Emerson make of shoes, for that brand of shoes had disappeared from the market for more than a decade. The adoption of the trade name "Emerson's Shoes" in a locality where the plaintiff had for more than three years previously done business under the name of "Emerson Fashions" might perhaps, if it stood alone, suggest an intent to appropriate the good will and trade name of the plaintiff. The adoption of the trade name by the corporate defendant is explained by the fact that some of the defendants have used that trade name since 1938 in conjunction with the retail stores conducted by them. The finding was justified that, in doing business in Newtonville under this trade name, there was no intent to deceive the public into thinking that this store was connected with the plaintiff's store. *Burns* v. *William J. Burns International Detective Agency, Inc.* 235 Mass. 553. *Libby, McNeill & Libby* v. *Libby,* 241 Mass. 239. *Highland Dye Works, Inc.* v. *Anteblian,* 270 Mass. 209. *Economy Food Products Co.* v. *Economy Grocery Stores Corp.* 281 Mass. 57.

The use of a trade name by one person in the conduct of a business is not to be enjoined at the instance of another person unless the latter shows that, by the use of the name, the former has put on the semblance of the latter and has or will thereby deceive the public to the harm of the latter. *General Fruit Stores, Inc.* v. *Markarian,* 300 Mass. 90. *Jays Inc.* v. *Purcell,* 313 Mass. 127. *Staples Coal Co.* v. *City Fuel Co.* 316 Mass. 503. Whether the use by the corporate defendant of its trade name has accomplished or will accomplish such a result must be determined by the effect of its use upon those who have recourse to this shopping district to purchase goods that both the plaintiff and this defendant sell. The use must be considered in the setting in which it is employed. We have read the advertisements of both parties and have seen the photographs of the exteriors of both stores. No one could reasonably mistake

one store for the other. A glance at the contents of the windows of one would readily show that the business there conducted is greatly different from that conducted in the other. The size, location and type of signs used on one store are entirely different from those used on the other. It has been properly found that there is no such similarity as would be likely to cause a person using ordinary care to trade with the corporate defendant in the belief that its store is conducted by the plaintiff. The test of similarity of names under which two businesses may be conducted has been so recently discussed with an ample collection of authorities that further discussion is not required. *First National Stores Inc.* v. *First National Liquor Co.* 316 Mass. 538.

The plaintiff finally contends that the word "Emerson's" has acquired a secondary meaning as designating his store and the goods sold by him. But the bill of complaint is based entirely upon an alleged infringement of the plaintiff's trade name "Emerson Fashions." The bill does not set forth that the plaintiff has any right to use the word "Emerson's" alone and that that right has been wrongfully interfered with by the defendants. Evidence of whatever meaning the word "Emerson's" had acquired in connection with the plaintiff's business was competent only in so far as it tended to prove the infringement of the trade name "Emerson Fashions" as charged in the bill. It would not be competent to prove the existence of a trade name different from that alleged in the bill. If, however, we disregard the scope of the bill and assume in favor of the plaintiff that the contention now made is open, the plaintiff cannot prevail. The general findings already mentioned, all of which were justified by the evidence, are decisive to the effect that the conduct of the corporate defendant has not resulted and is not likely to result in inducing the public to deal with the corporate defendant in the belief that they are dealing with the plaintiff, and that there has been no attempt by the corporate defendant to appropriate the plaintiff's business or to trade on his good name or reputation. The individual defendants are not charged with anything beyond organizing and maintaining the defendant corporation, and, the

action of the corporation not having been shown to be wrongful to the plaintiff, no liability can be fastened upon these defendants.

*Decree affirmed.*